Good morning. May it please the court, Edward Crane on behalf of Stephen Cronin. Doyle v. Ohio strictly prohibits the government from suggesting that a defendant's post-Miranda silence is inconsistent with innocence. That is precisely what the prosecutor did here. He opened his cross-examination by suggesting that the defendant's failure to tell his exculpatory story upon arrest was inconsistent with innocence. There is no exception to Doyle that would allow this type of argument. The so-called exceptions to Doyle involve situations in which the prosecutor highlights how the defendant's silence is inconsistent with some other aspect of the case. For example, the prosecutor may highlight how the defendant's silence is inconsistent if the defendant creates an impression that he cooperated with law enforcement or if the defendant testifies that he offered his exculpatory story upon arrest. Counsel, let's take this one step at a time. We're in habeas review, so our determination isn't whether the Massachusetts Appeal Court's decision is correct. It's an absolute matter. But whether it's either contrary to Doyle or an unreasonable application of Doyle, right? Correct. Doyle does not involve an issue. Where the defendant attempted to make in his direct testimony an affirmative use of his silence to explain it in a way that would help his defense. Can we agree on that as a matter of fact? Correct. Okay. So that this case can't be contrary to Doyle, right? Because there's a material factual distinction. So the issue we've got to resolve is whether it's an unreasonable application of Doyle, right? Not whether the different fact in this case, right, requires a different result or requires the same result. Or whether a reasonable court, looking at Doyle, looking at the distinction, could reach the conclusion that the Massachusetts Appeal Court did, right? Yes. And although we have to be guided by Supreme Court precedent, since there is none on this, we then have to look, or one place we can look, is to what other courts have done in similar circumstances. Yes. All right? And it seems to me that there is a fair amount of authority that says that where a defendant on direct testimony attempts to explain his silence, offers an explanation of it, that the government on cross-examination can attack the credibility of that explanation, just the same way as the government can attack the credibility of anything else that the defendant affirmatively proffers. Yes. I would agree with that. Okay. I agree. Do you want to agree with all of that, or do you want to agree with that you can attack the part that's post-arrest, an explanation of the post-arrest behavior? I thought your argument was that the government can't, in the course of doing that, attack the exculpatory story itself. They can attack the explanation. I mean, they can't use the silence as a grounds for casting doubt on the exculpatory story itself. Exactly. Yes. That's my position, and I think it really comes down to. But here the exculpatory story is the silence. The exculpatory story is, I didn't tell the officers because Michelle had warrants out on her. Yes, and I think that the prosecutor could have attacked that explanation. Okay. I think he could have pointed out, he could have highlighted the defendant's relationship with Michelle, why he would have put himself in jeopardy to protect Michelle. I think he absolutely could have gone and attacked that aspect of the explanation. But he doesn't attack the explanation at all. The explanation is not really even part of his cross-examination. His cross-examination, and I think really the important part that really shows what he's trying to get at, is you thought you were being wrongly arrested for a crime you didn't commit. Yes, and you didn't say anything. I mean, it's directly contrasting his claim of innocence with silence. Essentially saying, if you were innocent, why wouldn't you say something? So just if I understand it, on this understanding, his explanation of the silence is not his exculpatory story. His exculpatory story is Michelle drove the car. Yes. His explanation of his silence is, I didn't say anything about Michelle because Michelle had outstanding arrest warrants. Yes. So if that's right, just to follow this, your position would be, I take it, they could have commented on his silence to cast doubt on whether he would have been protecting Michelle. In other words, if the officer had said, you know, if you love Michelle so much that you stayed silent for her, you'd say no Doyle problem. But the Doyle problem arises when instead of just attacking his explanation for why he was silent, they go further and say, you were silent even though you thought you didn't commit the crime. Yes. That's at the moment in which you say there's a Doyle problem straight out, and I take it you'd say there's no authority suggesting that the cops can ever do that. Yes. Yes, that's exactly my position. But I didn't think the cross-examiner so much said you were silent as said you were silent about Michelle even though you knew you didn't commit the crime. I think, again, this is the critical language from the cross-examination, and I'll just note that it doesn't say anything about Michelle. You thought you were arrested wrongly for a crime you didn't do? Defending, yes. But you never told the police anything about this over the hours you were with them? No. About this meaning about Michelle. Yes. That this can't mean anything else in context. Well, it's the contrast of the initial question, you thought you were arrested wrongly for a crime you didn't do, so you thought you were innocent, or you claimed you were innocent, but you never told the police anything about your exculpatory story? Well, that very first question, a fair inference from that question, he says, officers, anything about what you were telling us today, what he had told them today was about Michelle. So why doesn't that get back to Michelle? Because that's pretty clearly what he's talking about. He's talking about the testimony that he gave, and that testimony was about Michelle. That very first question ties back into his testimony. Why isn't that okay? My argument would be that that's not the inference that the jury is going to take from this. Because he very easily could have just said, you thought you were arrested wrongly for a crime you didn't commit, and you never told the police about this because you cared so much about Michelle? In other words, what you're hanging your hat on is he didn't use the name Michelle, even though he says, about what you're telling us today, that you were not driving, and that basically is that you're not driving the car that night because of Michelle. So that's what you're hanging your hat on, I think. I think that the inference is, I'm sorry, go ahead. Well, I thought you were at the later question. So the initial question is, you never told the officers anything about what you're telling us today. What's that, he says, about Michelle? No, no. You never told either one of those officers, no. You never told them during the course of your booking, no. If I understood what you were saying before, it's at least ambiguous whether there's any Doyle problem up to that moment. I agree with that. Okay. Then he says, you thought you were arrested wrongly for a crime you didn't do. Cronin says, yes. But you never told police anything about this. And you'd say, what's this? This is being wrongly arrested for a crime you didn't do. Yes. And you'd say at that moment there's a Doyle problem. Yes. Okay. So that's the key moment is the Doyle problem. So if that's the point and the only point, as you're describing it, where there's a Doyle problem, others may have questions still about whether there's a Doyle error or not. But even assuming there was, what's the argument that that's not just harmless error under the more lenient standard under Breck? Because in this case, we've got him telling an inconsistent story to the other police officer. As the government points out, he doesn't question the ability of the first police officer who says he saw Cronin drive the car, that he was in a position, that officer, to see Cronin driving the car. So we've got one ambiguous statement that might reach Doyle in the context of an entire trial, and we're on habeas review. So why wouldn't this just be harmless? Well, I think because this is primarily because it's a battle of credibility in this case. There's no evidence that's outside of the testimony of the officers and the testimony of the defendant that would corroborate either one. It's a battle of credibility. And there's a long line of authority that speaks to the fact that a Doyle error is specifically prejudicial in cases involving credibility, cases where credibility is the key aspect of the defendant's case, basically. And the second point on that matter would be that this is not something that's sort of buried in his cross-examination. He starts his cross-examination with this. This is basically his primary point. He opens the cross-examination with this argument. And I think that has to be considered. And then also, I think the first few questions, while it's ambiguous at that point, once he makes this point and crosses the line into Doyle error, I think that sort of encapsulates, sorry, it basically takes all the other questions and makes it an overarching point. The point he is trying to make is that the defendant's claim of innocence cannot be believed because he didn't offer his story at the time of his arrest. And, again, I mean, I think that this being a battle of credibility, that would be my primary argument why this can't be considered harmless error. And, again, I would, I believe I've cited some cases in my brief, but I believe there's a long line of cases that speak to Doyle error being significantly prejudicial when this is the case, when there's one person's testimony against another. And I don't think that the fact of it. Are those cases in which the defendant himself explained the silence? Because the thing that I know some of the cases said when the government, when the defendant doesn't testify and the government comments negatively on not testifying, there's precedent that says you don't even need a curative instruction because it's just obvious to the jury. Doyle error is different because the silence wouldn't be obvious to the jury, but of course that's not true when the defendant raises the silence for the jury. And that's got to mitigate the harm to the defendant of comment on the silence, doesn't it? And with respect to that, I would just point to this court's decision in Morgan v. Hall, where essentially the Commonwealth made that type of argument that there was no prejudice because the defendant was the first one to introduce his own silence. Yeah, but there the defendant mentioned his silence in the cross-examination of a different witness. He didn't attempt to use it as an explanation for his story or as a reason for why he hadn't told his story earlier. It's completely different facts. And just with respect to prejudice, I think that the reasoning of that case is that it adds on to prejudice when the government sort of uses the silence to infer that the defendant is guilty. If the defendant simply brings up his silence, that isn't the same as the prosecutor. It doesn't basically give the prosecutor grounds then to bring up the silence and use it as a sword and say that the defendant's silence is indicative of guilt. Can I ask you about what the prosecutor said in closing? And you tell me whether this crossed the line in your view, taking what we've already established doesn't cross the line in your view and what does. At the closing, as I understand it, it says Cronin is concerned about this other person who has warrants, and yet he's getting arrested and he says nothing. Does that make any sense that somebody would actually do that, in other words being concerned about somebody who has warrants and saying nothing, in some sort of chivalry act, chivalrous act that he'd do this for this other individual? As I understand it, that's not a Doyle problem. That is not a Doyle problem. So doesn't that further mitigate the harm? In other words, we've got this one ambiguous statement which turns on, you thought you were arrested for a crime you wrongly didn't do, but you never told the police anything about this. And I understand why you think that's a Doyle problem. But then at closing, instead of harping on the fact that he was silent, even though he was wrongfully accused, instead he says, does it really make sense that you'd be silent in a chivalrous act for this other person, which you say is not a Doyle problem? I don't think that it minimizes the prejudice. It certainly doesn't add to the prejudice because there's no Doyle error there. Again, I really don't think that the prosecutor's argument here is ambiguous. I think up until he makes the highlighted questions, up until he asks those two questions, it's ambiguous. But then once he makes those two questions, those questions I don't believe are ambiguous in any way. I think that he is clearly making the inference to the jury that an innocent person would not withhold an exculpatory story if they were arrested, and that's precisely what Doyle prohibits. Did you ask for a curative instruction at any point? I wasn't trial counsel. Did trial counsel ask for a curative instruction? There's no evidence that trial counsel did. There was no curative instruction? No, there was no curative instruction. And none asked for it? None asked for it. With respect to Doyle error, the defense counsel did file a motion in Lemonade to exclude any testimony about post-arrest silence incited to Doyle. This was denied. And so I think it's arguable that the possible reason the defense counsel did not ask, did not object and did not ask for a curative instruction is she's already been denied at that point. Thank you. The Court has no further questions. I'll rest on my brief. Thank you. May it please the Court, Assistant Attorney General Todd Bloom for the Commissioner of Probation. This Court should affirm the District Court's denial of the petition for defhabius corpus. Your Honors, this is a case where the petitioner first raised the fact that he had been silent on direct examination and offered an explanation for it, and then the prosecutor then properly cross-examined him about that matter. I would like to note first that the petitioner presented a defense that he was not driving the vehicle in his opening statement after hearing both witnesses from the Commonwealth and after the close of the Commonwealth's case. The defense counsel then solicited an explanation for the petitioner's silence. The defense merely asked why. And the petitioner responded that he never testified on direct, that he told either officer that his friend Michelle was actually the driver of the van because she had a couple of warrants on her. This explanation for his silence wasn't that he received Miranda warnings, and during the closing argument the defense counsel repeated this story that he wasn't driving and was guilty, if anything, of misguided chivalry. Did you say that that was a pre-Miranda warning statement in the direct? No, Your Honor. I wasn't sure what you said. That's why I'm asking you to clarify that. As far as I could tell, no one said whether these statements were pre- or post-Miranda. Right. There's no evidence in the record. It's my understanding that the question is addressed both pre- and post-Miranda silence. To the extent they address pre-Miranda silence, Doyle does not apply. But the question, you thought you were arrested wrongly for a crime you didn't do, that's a question about post-booking. Post-booking, is it? Correct. And to those questions, those later questions. Doyle would apply whether it does or does not as a barrier is different. That's correct. And I would submit that those questions went to the petitioner's defense that he was not driving the van. That's problematic for you. I thought that what counsel had said before, for Cronin, was that insofar as the questions were about the reasons for the silence, there's no Doyle problem. But insofar as the questions go to negative inferences from the silence about the exculpatory story, that is a Doyle problem. Right. And you're just saying that these questions do go to the exculpatory story? No, I'm saying that when you look at the context of the cross-examination, the prosecutor was challenging the credibility of his testimony about his conduct after arrest. When you look at the first question on direct, it was,  and when you look at the first question on cross, it mirrors the direct question. So you never told the officers anything about what you're telling us today. And he said about what are we talking about? About Michelle. So the prosecutor was merely questioning as to the why. He was questioning as to the petitioner's explanation or motive for remaining silent. But what do you make of the question, you thought you were arrested wrongly for a crime you didn't do? How is that consistent with Doyle? He was not suggesting evidence of guilt from that question, Your Honor. I would suggest that the prosecutor was suggesting that the explanation the petitioner just gave for why he remained silent after arrest was not believable, and that is permitted. He was asking the petitioner about what he just testified to. There were four questions on cross that came immediately after the direct closed. And if you look at the context of the cross, he was alerting the jury to the recent statements about Michelle that were inconsistent with his conduct at the time. He was not drawing any meaning from the silence. And even assuming the law would have excluded from evidence his silence if the petitioner didn't bring it up, once he brought it up, the prosecutor could explore the soundness of that explanation. The prosecutor should not be constrained in asking the petitioner about a matter in which he just testified to in such a direct way. Just because the petitioner brings up silence on direct, the prosecution should not have to just skip over that entire part of the testimony on cross. Just so I get the logic of it, so your position would be the prosecutor at that point could have said, so you thought you were not the one who drove the car, and you stayed silent, and that would be fine? I suggest that when you look at the context of the question. Just ask him that question. I'm sorry, can you repeat the question? Yeah. In your view, since Cronin testified about the silence, it would then be permissible for the prosecutor to say you thought you were not the one driving the car, and yet you stayed silent. That would be okay to ask a question like that? If it went to his defense, and in this case the explanation of his silence was the basis for his defense, that's what makes this case different, Your Honor. I would suggest that the petitioner's argument at trial open the door to a full development of his actions, at least on the issue of his post-arrest silence, because that was the subject matter of his statements. But you're then saying if he opens it up about why he was silent, they can then start attacking the credibility of his exculpatory story on the grounds that he stayed silent. That seems to go right into what Doyle suggests is problematic. But that didn't happen here, and what happened here is by the petitioner's conduct, he waived his constitutional right to remain silent at trial, and the evidence of his silence was admissible, and this is what the prosecutor did. He was rebutting the impression that the petitioner just made that he made a rational decision to remain silent in order to protect his roommate. That is what the petitioner was saying on direct examination, and that is what the prosecution was crossing to. If there are no further questions on the cross-examination, I'll just briefly address harmlessness. If there are no questions on the closing argument, I would just say that if the prosecution never asked any questions in this case at all, the petitioner would have still offered the basis for his silence on direct. This was not a battle of credibility between two witnesses. There were two officers testifying, and then the petitioner testified. And I would also distinguish Morgan because the prosecutor in that case, as far as I can tell, didn't ask as to the why. It was a pre-epic case, so there was a different harmlessness error standard beyond a reasonable doubt. And in that case, the evidence was, they said, far from overwhelming in that there were two accounts of the evening which directly contradict each other. And again, here we don't have that. We have three accounts. And so the evidence at trial is also sufficient. The record states that Officer Jordan kept visual contact with the driver at all times. Trial counsel didn't object to Jordan's testimony as to the identity of the driver on cross. Jordan also testified that the petitioner was the operator and sole occupant and didn't see any woman in the area of the van or ever approach the van. And Officer Eng also testified the petitioner told him that he came from Jamaica Plain where he had a few cocktails. So I would suggest that any error, when you look at it in light of the entire record in this case, must be harmless. And if there are no further questions, I'll rest on my brief. Thank you.